UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVENTIST GLENOAKS HOSPITAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, <br><br> Defendant. | Case Number 1:06-CV-01206 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

### I. INTRODUCTION

Defendant's brief ignores that the total paid hours reported and used by Defendant in this case were not the total paid hours reported by Michael Reese Hospital (MRH). MRH reported total paid hours of 4,935,791 on the certified cost report it filed and the Defendant's Fiscal Intermediary unilaterally changed that figure to 6,491,307. This arbitrary and capricious change was paradoxical considering that the Fiscal Intermediary was reviewing the figure submitted by MRH because it already appeared too high.

The Defendant seems little interested in the substantive issues of this case. Instead, Defendant prefers to stake his primary arguments on a weakly stated standing challenge and a plea for dismissal of Plaintiffs' substantive claims on the erroneous grounds that Plaintiffs failed to provide a statement of facts in a case where Defendant acknowledges the facts are not disputed.

1

When Defendant does turn his attention to the substantive issues it is to argue that a data entry, that the parties have stipulated was erroneous, was not a data entry error and its erroneous tabulation in the wage index determination at issue was not a tabulation error. The Defendant then asserts that its unilateral entry of wrong information to determine the Chicago MSA FFY 1999 wage index is beyond the authority of this Court to correct.

The Defendant's claims are in error as explained below.

## II.  ARGUMENT

**A.  There is No Basis for Dismissal Under Local Rule 7(h).**

Defendant's first argument is that the case should be dismissed for the alleged failure of Plaintiffs to comply with Local Rule 7(h)'s requirement for a "statement of material facts as to which the moving party contends there is no genuine issue." Defendant's Memorandum, p. 12.

Plaintiffs' believe such requirement was satisfied in the "Statement of Facts" portion of their brief which expressly noted that "the parties agree there are no material facts in dispute." Plaintiffs' Memorandum in Support of Summary Judgment (hereinafter "Plaintiffs' Memorandum") pp. 1 – 17. The Rule does not explicitly require the Statement of Material facts to be filed as a separate document. In addition, Plaintiffs' statement of undisputed facts also contained the appropriate citations to the record in this case. In any event, this court has the discretion to consider a motion for summary judgment even if it is deemed to technically not comply with the local rule. Cleveland

County Assoc. for Gov't by the People v. Cleveland County Bd. of Comm'rs, 142 F.3d. 468, 475 n. 12 (D.C. Cir. 1998).

To the extent Local Rule 7(h) requires that such a statement of undisputed facts be filed separately the Plaintiffs cure any alleged deficiency with the filing of "Plaintiffs' Statement of Material Facts As To Which There Is No Genuine Issue" concurrent with this Memorandum. *See* Nathan Gardels v. Central Intelligence Agency, 637 F.2d. 770 (D.C. Cir. 1980) (remanding case to District Court to allow party that had failed to comply with local rule mandating filing of specific genuine fact issues to file a proper recitation of material facts).

Defendant's demand for dismissal under rule 7(h) of this case without substantive consideration of the merits elevates concerns of form over substance and is inappropriate given the lack of any credible claim of prejudice to Defendant. The purpose for requiring a party submitting a motion for summary judgment to submit a statement of material facts for which there is no genuine issue is to isolate the facts the parties assert are material to distinguish the disputed from undisputed facts. Nathan Gardels, 637 F.2d at 773. This allows the opponent to respond by filing a counter-statement contesting that there are genuine facts in dispute. Id. That concern is not present where both parties have stipulated there are no genuine facts in dispute and for that reason are both seeking summary judgment.

Even if Defendant's request was granted, given the preliminary nature of the proceedings, and the lack of a final judgment, Plaintiffs would request leave to refile a motion for summary judgment as any such dismissal should not be with prejudice as it would not be based on the merits of the motion. In view of the severity of dismissal of a

potentially meritorious claim, such action should only be applied to "egregious conduct." Burke v. Gould IV, 286 F.3d 513, 518 (D.C. Cir. 2002). An example of such "egregious conduct" that might grant discretion to dismiss on the merits is when a party fails to correct deficiencies after a variety of opportunities to do so and further opportunity would prejudice the other party. Id. (citing Jackson v. Finnegan, Henderson, Farabow, Garret & Dunner, 101 F.3d. 145 D.C. Cir. 1996)). Such egregious facts are not present in this case and Defendant does not even attempt to assert otherwise.

**B.     Plaintiffs Have Standing.**

    1.     <u>Plaintiffs Meet the Recognized Standard for Having Suffered An Injury Traceable to the Challenged Action</u>.

Defendant attempts to suggest Plaintiffs may not have standing. Without directly asserting a lack of standing, Defendant argues "it is not clear how Plaintiffs have standing." Defendant's Memorandum, p. 14. Defendant cites Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) for the proposition that "an essential element of standing is that the injury complained of be traceable to challenged action." Id. Plaintiffs meet the standards for standing even as set and argued by the Defendant.

As made clear in the Plaintiffs' first brief, they are appealing the final determination of the FFY 1999 wage index for the Chicago MSA. Plaintiffs' Memorandum, p. 14. The right for judicial review of such PPS payment rate determinations is expressly established by statute at 42 U.S.C. § 1395oo(a)(1)(A)(ii). See Plaintiffs' Memorandum pp. 13 – 14.

While the specific error for the Chicago MSA wage index determination involved MRH, the Defendant in its own brief acknowledges that the setting of the wage index for the MSA impacts the reimbursement of all Plaintiff hospitals as "under reported data by

any hospital in the area will have the effect of decreasing payments made to all hospitals in the area."

It is also instructive to again take notice of who is primarily responsible for the erroneous reporting of the data from MRH. In this case, the "total paid hours" for MRH were over stated, resulting in the wage index being understated because the total wage costs per hour were deflated by the increased denominator of "total paid hours." It is uncontested that MRH originally reported 4,935,791 paid hours resulting in an average hourly wage of $16.77. Tr. Vol. I, at p. 14-15. It is also uncontested that the Defendant's Fiscal Intermediary unilaterally adjusted the total paid hours reported by MRH to 6,491,307. Tr. Vol. I, at 15. This reduced MRH's average wage costs to $13.81. Tr. Vol. I., p. 210. It is also undisputed that the Defendant denied a mid-year correction of these errors.

It is these acts by the Defendant, who is definitely a party to this case, that the Plaintiffs challenge. By Defendant's admission, "the wage index has a direct impact on the reimbursement a hospital receives" and anything that under-reports that wage index has "the effect of decreasing payments made to all hospitals in the area" to include the Plaintiff hospitals. Defendant's Memorandum at 4-5. The Plaintiffs have clearly met the Lujan standard for a complaint of injury traceable to the challenged action. The challenged action and injury is the setting of a deflated wage index for the Chicago MSA resulting in over $14 million in underpayments to Plaintiff hospitals and the refusal of Defendant to later correct that error. Those are actions of the Defendant as the uncontested facts of this case establish. It is difficult to imagine a stronger nexus between a challenged action and a challenged injury than exists in this case.

2.  <u>The Challenge To Standing is Inconsistent With Stipulations in This Case and the Decisions of the PRRB.</u>

The PRRB in its December 15, 2005 jurisdictional decision ruled that "there is no doubt that the 81 other Providers in the Chicago MSA were adversely affected by the Reese Hospital wage data determinations and that the "Board concludes it does have jurisdiction over the 81 Providers other than Reese." Tr. Vol. I., pp. 61 – 62. The Board cannot have jurisdiction over a case in which the Providers do not have standing.

The parties to this matter stipulated that expedited judicial review (EJR) was appropriate. Tr. Vol I., p. 15, ¶ 10. Stipulating to the appropriateness of judicial review for a matter that the stipulating party now suggests may be barred from judicial review by Article III of the Constitution is a study in contradiction. Accordingly, the Defendant's stipulation that EJR was appropriate is inconsistent with the Defendant's current assertion that Plaintiffs lack standing.

The PRRB when granting EJR in this case also directly ruled that "it has jurisdiction over the matter," a determination that could not be accurate if the Plaintiffs lacked standing. Notably, the Defendant has taken the position that "the PRRB's findings are final and should not be revisited by this Court." Defendant's Memorandum, p. 15. That would accordingly include the PRRB's findings that the Plaintiffs were adversely affected by the wage index determinations for MRH, that Plaintiffs had a jurisdictionally proper appeal, and that expedited judicial review on the merits for that appeal was appropriate.

C.  **The Fiscal Intermediary Made a Data Entry or Tabulation Error and Arbitrarily and Capriciously Refused to Make a Mid-Year Correction to a Wage Index the Defendant Knew Was Incorrect.**

The defendant claims the mid-year correction, for what Defendant concedes was a wrongly calculated wage index, was denied because the Fiscal Intermediary made no data entry or tabulation error. Defendant's Memorandum, pp. 15-16. That is a remarkable position considering that it was not MRH which entered the figure of 6,491,307 total paid hours to use when tabulating the wage index to a wrong and deflated figure of $13.81 per hour. Those acts were unilaterally those of the Fiscal Intermediary and the Defendant.

The Defendant seems to acknowledge that the data at issue was determined and entered by the FI, but claims that Plaintiffs "fail to explain how this amounts to a 'data entry or tabulation error.'" Plaintiffs believe the Defendant demands that they state the obvious, but will oblige. When the Defendant unilaterally entered data, of its own choice, that was in error, that constitutes a data entry error. When Defendant uses that erroneous data to tabulate an incorrect wage index, that constitutes a tabulation error.

The Defendant pleads that the Secretary's restrictive construction for what constitutes a data entry or tabulation error is "reasonable." Defendant's Memorandum at 16. Plaintiffs respectfully suggest that a construction under which no provider in the entire nation qualified is one that is meaningless and not reasonable. See Tr. Vol., I. at 125.

Further, the Defendant has an obligation to use the best data available and at the time of the mid-year correction had much better data than it used. The circumstances here are analogous to Bellevue Hospital Center v. Leavitt, 443 F.3d 163 (2d Cir. 2006), where the United States Court of Appeals rejected a similar claim by the Secretary that

7

once his procedures were followed he no longer had an obligation to gather more data when it was clear the initial data gathered was in error. The Court of Appeals noted that "it was arbitrary and capricious for the agency not to return to data gathering" when it had not successfully completed the initial data gathering. Id. at 180. The Court rejected the Agency's claim that the statute only required gathering data every three years and found that was not an excuse for using poor data and noted that the statute "does not preclude the agency from doing so more frequently." Id.

The Defendant suggests that had the Metropolitan Chicago Healthcare Council (MCHC) asked for mid-year correction relief for a different reason other than the "data entry or tabulation entry error" criteria that they may have received consideration. Defendant's Memorandum at p. 17. The Defendant's argument is disturbingly disingenuous because the provision cited to requires a tabulation error which Defendant insists never existed.

While the Defendant mentions only a requirement that the party requesting the change "could not have known about the error or did not have opportunity to correct the error," a review of the regulation establishes that the "error" at issue must be a tabulation error of the kind Defendant (wrongly) claims does not exist here. The relevant regulation at 42 C.F.R. § 412.63(x)(2)(i)[1] reads as follows:

---

[1] Defendant's brief incorrectly cites this provision as 42 C.F.R. § 412.63(w)(2)(i)(B). The attribution to subparagraph (w) is in error as the provision is at subparagraph (x) as cited above. Subparagraph (w) has no reference to the language at issue and deals with a different matter.

>> (x) *Adjusting for different area wage levels*
>
>> (1) CMS adjusts the proportion (as estimated by CMS from time to time) of Federal rates for inpatient operating costs computed under paragraph (j) of this section that are attributable to wages and labor-related costs for area differences in hospital wage levels by a factor (established by CMS based on survey data) reflecting the relative level of hospital wages and wage-related costs in the geographic area (that is, urban or rural area as determined under the provisions of paragraph (b) of this section) of the hospital compared to the national average level of hospital wages and wage-related costs. The wage index is updated annually.
>
>> (2)
>>
>>> (i) CMS makes a midyear correction to the wage index for an area only if a hospital can show that --
>>>
>>>> (A) The intermediary or CMS made an error in tabulating its data; and
>>>>
>>>> (B) The hospital could not have known about the error, or did not have the opportunity to correct the error, before the beginning of the Federal fiscal year.
>>>
>>> (ii) A midyear correction to the wage index is effective prospectively from the date the change is made to the wage index.

In his arguments the Defendant referenced and quoted § 412.63(x)(2)(i)(B) without advising this court that said provision was connected to the requirement for a tabulation error in § 412.63(x)(2)(i)(A).

The provision Defendant suggests the Plaintiffs should have applied under is actually more restrictive than the one the Defendant claims Plaintiffs applied under. Section 412.63(x)(2) applies only to tabulation errors and contains the additional requirement of the hospital not having opportunity to correct the error. By contrast, the

mid-year correction notice in the November 19, 1998 Federal Register included both data entry and tabulation errors as a basis for mid-year correction and did not require that the requesting hospitals not have an opportunity to correct the error.

Nor did the MCHC request for mid-year correction preclude consideration under § 412.63(x)(2)(i). The MCHC request did not limit itself to the exception found in the November 19, 1998 Federal Register. The MCHC merely noted that it was under that basis that MRH sought relief. MCHC expressly sought relief based on "the totality of circumstances" while citing the "significant hardship for Chicago area hospitals" if the adjustment were not made. The "totality of the circumstances" producing this "significant hardship" includes that the 81 hospitals in the MSA had no opportunity to know of or correct the error. Tr. Vol. I., pp. 242 – 243.

Remarkably, Defendant suggests the Plaintiffs to this case would have had an uphill struggle to show they could not have known about the error because "there is no question staff at MRH could have discovered the error." Defendant's Memorandum, p. 17, note 6. Even assuming that the staff at MRH could have discovered the error, as Defendant has noted, MRH is not a party to this lawsuit. Defendant's Statement of Material Facts as to Which There is No Genuine Issue, ¶ 2. Just because MRH might have been able to discover the error does not mean that any of the Plaintiffs could have. By Defendant's own admission, the notices regarding MRH's specific data were to MRH and not to the Plaintiffs. Id. at ¶¶ 3, and 5 – 8.

Similarly, the Defendant claims that because hospitals certify the accuracy of their cost report data that Plaintiffs are barred from relief for the incorrect wage index

determination made by CMS. However, the Plaintiffs in this case certainly never certified the accuracy of MRH's cost report data. It is also worth noting that the total hours figure submitted by MRH of 4,935,791 total paid hours, is what MRH certified to, and was much more accurate than the 6,491,307 hours used by CMS after the FI unilaterally changed MRH's report of total paid hours to that number.[2]

### D. The Law Requires That Wage Indices Reflect Area Differences in Wage Costs Compared to the National Average.

Declaring that "Section 1395ww(d)(3)(E) does not even require the Secretary to employ the concept of a 'wage index'" the Defendant argues that the use of an erroneous wage index does not violate the statute. Defendant's Memorandum, pp. 18 – 21. The Defendant has to be very selective in his presentation to this Court of the Medicare statute in order to suggest that the concept of a "wage index" is not mandated by Congress. While the words "wage index" are not used in § 1395ww(d)(3)(E), they are used repeatedly in the Medicare statute and Public Laws, often in direct reference to § 1395ww(d)(3)(E).[3] In any event, having created a "wage index" to accommodate the statutory demand for a wage related adjustment factor, the Secretary must implement it to meet the statute's mandate that the wage related adjustment factor reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level."

---

[2] Again, the correct count for total paid hours figure, as stipulated to by the parties, is 4,350,805. Tr. Vol. I., p. 2, ¶ 9.

[3] See e.g. 42 U.S.C. § 1395ww(d)(8)(C) (discussing contingencies related to effects on the "wage index" for hospital relocated into a different geographic area for PPS payment purposes); § 1395ww(d)(13) providing for an increase in the wage index applied under paragraph (3)(E) for qualifying counties affected by out migration of employees.

Rather than engage in negative arguments about what the statute supposedly does not say, Plaintiffs urge this Court to focus on what the statute does say. The Defendant's assertion that "apart from requiring that the Secretary update the factor he creates to fulfill this mandate once a year . . . section 1395ww(d)(3)(E) leaves the calculation and application of this factor entirely to the Secretary's discretion" is not really true.

The statute unambiguously mandates that the adjustment factor (no matter what one calls the wage related adjustment factor) reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." The Secretary failed to do that in this instance. Because the Secretary chose to use erroneous data, and not correct it, the wage level of the Chicago MSA was indisputably incorrect and did not reflect the wage level for the Plaintiff hospitals as compared to the national average hospital wage level.

As pointed out in Plaintiffs' main brief, the Medicare "Act *requires* the Secretary to create an index that *accurately* represents the relative wage levels of hospitals in a given MSA." Centra Health, Inc. v. Shalala, 102 F.Supp.2d 654, 660 (W.D. Va. 2000). When the Secretary's approach results in severe distortion of the wage index, then it must be changed to "more accurately reflect the region's hospital wages." Id. The structure of the Medicare Act indicates that wage index issues are subject to judicial review and are not protected by agency discretion. Id. at 658. Under the law, judicial review is an appropriate remedy if "the Secretary refused to make any revision to an erroneous wage index." Methodist Hospital of Sacramento v. Shalala, 38 F.3d. 1225, 1230 (D.C. Cir. 1994).

Such an erroneous wage index is exactly what happened in this case, and contrary to the Defendant's claim, the Secretary does not have the discretion to refuse to correct erroneous payments. Congress set forth the appeal and judicial review process in 42 U.S.C. 1395oo(a) to give hospitals a right to compel corrections to erroneous payments. The Secretary has great discretion to determine how to accomplish adjusting PPS payments to reflect area wage differences as compared to the national average. The Secretary does not have the discretion to make adjustments that do not reflect area wage differences as compared to the national average.

### E. The Chicago MSA Wage Index Was Arbitrarily and Capriciously Determined.

The Defendant has little to say regarding the clearly arbitrary and capricious means the wage index was determined in this instance. While Defendant attempts to blame the error on MRH, pointing out that MRH certified its total paid hours on its cost report, Defendant's Memorandum, p. 21, the Defendant virtually ignores that MRH's cost report number was much closer to the correct total paid hours than the number used by Defendant. MRH reported total paid hours of 4,935,791. The Fiscal Intermediary unilaterally changed that number to 6,491,791, a number that neither MRH or the Plaintiffs in this case "certified." The parties stipulate that the correct number of total paid hours is 4,374,805,

Citing to Methodist Hospital of Sacramento, 38 F.3d 1225, the Defendant boasts that because hospitals submit their certified accurate cost reports, they therefore "have it almost totally in their control to ensure that their wage data is accurate." Defendant's Memorandum at 21 – 22. However, this alleged control is obviously completely lost if

the FI chooses to unilaterally change the number reported by the Hospital. In any event, the Plaintiffs in this case had no control over what either MRH or the FI did in this matter.

The nature of this unilateral change confirms the arbitrary and capricious nature of the determination. The FI investigated the originally reported hours of 4,935,791 because that number seemed much too high. So in response to the seemingly too high figure, the FI unilaterally raised the total paid hours to 6,491,307. Again, the parties stipulate that the correct figure was 4,374,805.

**F.   Defendant Arbitrarily and Capriciously Failed to Exclude MRH's Data as Aberrant and Unreliable.**

The Defendant acknowledges that the Agency has a policy to exclude data for a hospital with "incomplete or inaccurate data resulting in zero or negative, or otherwise aberrant, average hourly wages." Defendant's Memorandum at 24 (citing 71 Fed. Reg. at 48,015). Defendant dismissively claims that the data in this case was not so aberrant "that the FI was unable to use it."

Defendant provides no ascertainable standards as to when data might be so aberrant as to be unusable. The decision in this regard is completely arbitrary. There is no doubt that the data was aberrant and that the FI knew it. The FI investigated the aberration of the total paid hours as being too high. The FI's arbitrary and capricious "solution" was to raise it even more, thereby increasing the aberration. The FI also knew that the data from MRH was incomplete because the FI did not get responses from its inquiries to the hospital.

The FI's decision to use knowingly incomplete data as a basis to increase a number that was already apparently too high was arbitrary and capricious. The FI's appropriate course would have been to exclude MRH's data altogether rather than use data that the FI knew or should have known was wrong. While Defendant suggests that the data was not so aberrant "that the FI was unable to use it," one can use data no matter how wrong it is. Doing so will simply produce wrong results, as it did in this case.

This case is analogous to the decision of the PRRB in <u>JFK-Raritan-Hunterdon 03 Wage Index Group v. BlueCross BlueShield Association</u>, PRRB Hearing Dec. No. 2007-D2, Case No. 03-0482G (Oct. 11, 2006), CCH Medicare and Medicaid Guide, ¶ 81,617. In <u>JFK</u> two hospitals sought to exclude aberrant wage data from another hospital in their MSA from the wage index determination for the MSA. The hospital with the aberrant data was not a party to the appeal. HCFA took the position that the data should be included because the hospital with the aberrant data was in operation for most of the fiscal year at issue.

The PRRB disagreed, noting that it was undisputed that the hospital's cost report contained certain wage data elements that exceeded HCFA's established thresholds and were flagged for resolution by the desk review program. Notably, that is precisely what occurred in the present case. Tr. Vol. I., pp. 57, 142, 145. As in this case, the Board in <u>JFK</u> noted that the aberrant elements could not be resolved. Accordingly, the Board ordered the case "remanded to CMS for the recalculation of the Providers' 2003 wage index excluding South Amboy's wage data, and for the revision of the Providers' program payments affected by the re-calculation." Providers here seek the same relief.

## **CONCLUSION**

The FI arbitrarily and capriciously increased the total paid hours for MRH while it was evaluating why the numbers submitted by the hospital seemed too high. The number used was a data entry made by the Defendant, not MRH or the Plaintiff hospitals, and it was used to tabulate the FFY 1999 wage index for the Chicago MSA, adversely affecting every PPS payment made to Plaintiff hospitals. The Defendant cemented these errors into place by arbitrarily and capriciously refusing to make a mid-year correction of the wage index. This court should not allow these errors to stand and should grant summary judgment in favor of the Plaintiffs and remand this matter back to the Agency to make corrected payments based on what the parties agree is the correct data, or based on excluding MRH data from the PPS payment determinations.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

s/ N. Kent Smith
L. Richard Gohman, Attorney No. 7179-49
N. Kent Smith, Attorney No. 1777-49
Keith D. Barber, Attorney No. 19052-49
Suite 2000, Box 82064, One American Square
Indianapolis, IN 46282
(317) 633-4884
*Attorneys for the Plaintiffs*

LAW OFFICE OF BRAD KELLY, P.C.


s/ Bradley L. Kelly
Bradley Kelly, D.C. Bar No. 292623
7700 Old Georgetown Road
Bethesda, MD 20814
(301) 656-7707
*Attorneys for the Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2007, a copy of the foregoing was filed electronically. Parties may access this filing through the Court's system.

Kenneth Wainstein
Megan Rose
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530


Paul E. Soeffing
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room C2-05-23
7500 Security Boulevard
Baltimore, MD 21244-1850



s/ Brad Kelly

Law Office of Brad Kelly, P.C.
7700 Old Georgetown Road
Bethesda, MD 20814
(301) 656-7707
*Attorney for Plaintiffs*