## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVENTIST GLENOAKS HOSPITAL, | ) | |
| et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 06-1206 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | **ECF** |
| Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, Michael O. Leavitt, Secretary, Department of Health and Human Services, hereby responds to Plaintiffs' Statement of Material Facts As To Which There Is No Genuine Issue ("Plaintiffs' Statement") in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h).

Defendant avers that, to the extent that the parties disagree as to the facts underlying the present action, those disagreements are not material. Instead, all material facts are those found in the record. Under the Medicare statute, 42 U.S.C. § 1395oo(f)(1), and the Administrative Procedure Act, 5 U.S.C. § 706(2), the facts found by the agency are reviewed to determine whether they are unsupported by substantial evidence taken as a whole. Nevertheless, responding specifically to the numbered paragraphs of Plaintiffs' Statement and using the same paragraph numbering, Defendant responds to the following specific assertions in Plaintiffs' Statement:

3. Defendant disputes that the 4,935,791 paid hours had an attending hourly wage of

$16.77.  The $16.77 was the average hourly wage for the 5,006,981 paid hours that included

additional hours for contract labor and home office salaries.  A.R. 138.

8.   Defendant disputes this statement.  The letter does not state nor suggest that it was

sent because Michael Reese Hospital's "wage index information reported a more than 10%

decrease in its wage index from the year before."  A.R. 153.  Rather, the hospitals that brought

the group appeal suggested that this was the reason.  A.R. 145.  The Provider Reimbursement

Review Board did not make a finding of fact on this, but merely stated that "repeated requests for

wage data are <u>alleged</u> to have been made because Reese's average wage changed more than 10%

from 1994 to 1995."  A.R. 57 (emphasis added).

18.   Defendant disputes the accuracy of Plaintiffs' quotation from the Federal Register

notice in that it omits the word "Additional."  The correct quote from the Federal Register is:

"Limited Additional Opportunity to Request Certain Hospital Wage Data Revisions for FY

1999."  63 Fed. Reg. 64,191 (1998) (A.R. 518).

19.   Defendant disputes the completeness of Plaintiffs' quotation from the Federal

Register notice in that it omits the criterion that the fiscal intermediary must also have approved

the wage data revision.  A.R. 520.

21.   Defendant disputes Plaintiffs' characterization that the fiscal intermediary's

adjustment of Michael Reese Hospital's total paid hours was a "data entry or tabulation error."

The Provider Reimbursement Review Board found that "the change made to total hours was not

a data entry or tabulation error."  A.R. 59.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

/s/
MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220

/s/
PAUL E. SOEFFING
Attorney
D.C. Bar No. 459480
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room C2-05-23
7500 Security Boulevard
Baltimore, Maryland 21244-1850
410-786-1895

OF COUNSEL:

DANIEL MERON
General Counsel

KATHLEEN H. McGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVENTIST GLENOAKS HOSPITAL, | ) | |
| et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 06-1206 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | **ECF** |
| Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

In this action, Plaintiffs challenge the Secretary's denial of a request to revise the wage data of Michael Reese Hospital ("MRH") – a non-party to this lawsuit. The wage data is used to determine the wage index component of Medicare's hospital inpatient Prospective Payment System. Plaintiffs here are subject to the Chicago, Illinois Metropolitan Statistical Area ("Chicago MSA") wage index.

In their opposition brief, Plaintiffs focus on the issue of what the total paid hours should have been for MRH and claim that the Secretary has ignored this issue. However, Plaintiffs fail to recognize that the central issue in this case is whether MRH followed the necessary requirements to obtain a revision to its wage data pursuant to the Secretary's rules for revising such data. MRH did not report accurate data. Moreover, MRH did not respond to repeated requests from its fiscal intermediary for explanation of its data. Finally, MRH did not properly seek a revision to its data. Likewise, the other hospitals in the Chicago MSA, who are Plaintiffs

in this lawsuit, had the opportunity to review MRH's data for accuracy prior to the Secretary's

finalization of the wage indices – yet they failed to do so.  Because of these failures of both MRH

and Plaintiffs, Plaintiffs have no right to seek now a revision of MRH's wage data nor to seek a

revision of the wage index that is based on that data.

## ARGUMENT

### I. Plaintiffs Do Not Challenge Defendant's Factual Statements

As noted in the Secretary's opening brief, Plaintiffs failed to file a statement of material

facts as to which there is no genuine issue as required by Local Rule 7(h).  Memorandum of

Points and Authorities in Support of Defendant's Motion for Summary Judgment and in

Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mem.") at 12.  Plaintiffs

belatedly filed their "Statement of Material Facts As To Which There Is No Genuine Issue" (Pls.'

Statement") with their opposition brief.  However, Plaintiffs did not file any response to the

Secretary's "Statement of Material Facts As To Which There Is No Genuine Issue" (Def.'s

Statement").  Thus, as stated in Local Rule 7(h):

> In determining a motion for summary judgment, the court may assume that facts
> identified by the moving party in its statement of material facts are admitted,
> unless such a fact is controverted in the statement of genuine issues filed in
> opposition to the motion.

LCvR 7(h).  See also LCvR 56.1.

Because Plaintiffs have provided no response to Defendant's Statement, Plaintiffs must

be deemed to have conceded all of Defendant's material facts.  See Twist v. Meese, 854 F.2d

1421 (D.C. Cir. 1988); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d

145, 151 (D.C. Cir. 1996); Heasley v. D.C. Gen. Hosp., 180 F. Supp. 2d 158, 163 (D.D.C. 2002)

(treating Defendant's entire statement of material facts as conceded where Plaintiff failed to submit a statement of genuine issues); <u>Trawick v. Hantman</u>, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001). Accordingly, these facts are sufficient, in and of themselves, to rebut all of Plaintiffs' claims in this case.

Furthermore, in defending their original failure to file a statement of material facts with their opening brief, and in response to the Secretary's contention that the Plaintiffs' motion could be denied and summary judgment granted for the Secretary on this ground alone, Plaintiffs contend that the most the court could do is dismiss this case without prejudice and they could then merely refile their action with the court. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Opp.") at 3. Plaintiffs should not be so blithe. This is an action for review under 42 U.S.C. § 1395oo(f)(1) which provides for judicial review of agency action if "commenced within 60 days" of the Secretary's final decision. That date passed shortly after Plaintiffs filed their complaint with this Court, and therefore, they would not be able to timely refile their lawsuit. <u>See</u> <u>Simons v. Southwest Petro-Chem, Inc.</u>, 28 F.3d 1029, 1030 (10th Cir. 1994) (dismissal without prejudice does not toll statute of limitations); <u>Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr.</u>, 721 F.2d 68, 77 (3d Cir. 1983) (same).

## II. **Plaintiffs' Standing to Bring This Action Is Questionable**

Plaintiffs complain of an error in the wage data of MRH – a hospital that is not a party to this action. Def.'s Statement ¶ 2; Pls.' Statement ¶ 2. However, neither MRH, nor any other hospital, sought a revision of MRH's wage data pursuant to the procedures outlined by the Secretary. Having failed to follow the necessary administrative procedures to challenge the data,

3

Plaintiffs cannot now ask for relief from this court.  Thus, the concerns the Secretary raises

regarding standing are akin to an argument that Plaintiffs have failed to exhaust their

administrative remedies, see W.A. Foote Mem'l Hosp. v. Shalala, No. 99-75202 (DT), 2001 U.S.

Dist. LEXIS 24981, *6, *18 (E.D. Mich. Feb. 13, 2001) (where provider fails to seek a correction

within the timeframe established by the Secretary, it has failed to exhaust its administrative

remedies); Administrative Record ("A.R.") 59.  Moreover, Plaintiffs make no argument that they

need not comply with the Secretary's procedures because those procedures are somehow invalid.

Having neither followed the procedures, nor challenged them directly, Plaintiffs are entitled to no

relief, regardless of which justiciability doctrine – lack of standing or failure to exhaust – might

apply.

       Plaintiffs also contend that standing must exist because they stipulated with the fiscal

intermediary during the administrative proceedings that this matter qualifies for "expedited

judicial review."  Pls.' Opp. at 6.  But such stipulations before an administrative tribunal, where

the Secretary is not a party, are not binding on the Secretary in later court litigation.  Howard

Young Med. Ctr. v. Shalala, 207 F.3d 437, 443 (7th Cir. 2000); Def.'s Mem. at 24, n.8.  Rather,

this court must make its own independent finding as to whether Article III standing is present.

Byrd v. U.S. Envtl. Prot. Agency, 174 F.3d 239, 243 (D.C. Cir. 1999) ("standing is a 'threshold

jurisdictional question' that cannot be assumed in resolving litigation"); Natural Res. Def.

Council v. Pena, 147 F.3d 1012, 1020 (D.C. Cir. 1998) ("Article III standing is always an

indispensable element . . . neither we nor the Congress can dispense with the requirement").

## III.  There Was No Data Entry or Tabulation Error

       Plaintiffs continue to contend that the error in MRH's data was a "data entry or tabulation

4

error."[1]  Pls.' Opp. at 7.  However, as the Provider Reimbursement Review Board ("PRRB")

found in its decision (A.R. 59-60) and as Defendant explained in his opening brief, the error was

not due to an erroneous entry of data or an erroneous tabulation of that data by the fiscal

intermediary or the agency.  Def.'s Mem. at 15-16.  The error stemmed from a reporting error by

the hospital.  A.R. 57-58.  MRH originally reported its total hours as 4,935,791.  A.R. 14-15, 57,

138; Pls.' Statement ¶ 3.  In order to avail itself of the special one-time mid-year correction

process for Federal fiscal year 1999, MRH was required to show that it had properly requested

the wage data revision by March 9, 1998.  63 Fed. Reg. 64,191, 64,192 (1998); Def.'s Mem. at 8.

Yet, MRH did not request a change to its total hours until November 30, 1998.  A.R. 58, 527-29;

Def.'s Mem. at 15.

    Although Plaintiffs contend that the situation here is similar to that in Bellevue Hospital

Center v. Leavitt, 443 F.3d 163 (2d Cir. 2006), the circumstances in Bellevue were much

different.  Bellevue involved the agency's occupational mix adjustment to the wage index that

was required to be applied beginning on October 1, 2004.  Bellevue, 443 F.3d at 172.  The statute

required that the Secretary "'provide for the collection of data every 3 years on occupational mix

for employees of each [covered] hospital . . . in the provision of inpatient hospital services, in

order to construct an occupational mix adjustment in the hospital area wage index.'"  Id. (citing

§ 304(c)(1) of the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of

---

[1] Plaintiffs assert that the Secretary cited the incorrect section of the regulation regarding mid-year corrections and that the correct subsection is (x), not (w).  Pls.' Opp. at 8, n.1.  However, in making such an assertion, Plaintiffs fail to recognize that, in fact, 42 C.F.R. § 412.63(w)(2)(i) (1998) was the relevant regulation in effect in late 1998 and early 1999 (Code of Federal Regulations revised as of Oct. 1, 1998), the time of the events at issue in this case.  The provision was moved to subsection (x) in 2000.  Def.'s Mem. at 7.

2000, Pub. L. 106-554, 114 Stat. 2763). The agency gathered the data, but indicated it lacked confidence in that data because hospitals were surveyed for a short period of time, there was no time to audit the data, and since this was the first time the data were collected) there was no baseline to use to evaluate the data for potential errors. Id. at 173. Thus, the agency applied the occupational mix adjustment to only ten percent of the wage index for the first year. Id. The Court of Appeals held that the statute required "application in full on October 1, 2004," id. at 178, and that the agency's decision to implement the provision at only 10 percent was therefore arbitrary and capricious, id. at 179. Unlike that situation, here the statute does not provide for how to collect or correct the data. The statute merely requires the Secretary to account for varying wage levels and leaves the details of that process to the Secretary's discretion. 42 U.S.C. § 1395ww(d)(2)(H), (3)(E); Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1230 ("statute does not specify how the Secretary should construct the index, nor how often she must revise it . . . [r]ather, Congress through its silence delegated these decisions to the Secretary"); Def.'s Mem. at 19. Thus, while the court in Bellevue concluded that the agency had not complied with the statute, no such finding can be made here.

Plaintiffs make the further argument that the letter submitted by the Metropolitan Chicago Healthcare Council ("MCHC") regarding MRH's request did not limit the relief sought to the special one-time mid-year correction in the November 19, 1998 Federal Register. Pls.' Opp. at 10. Although not entirely clear, Plaintiffs apparently are suggesting that the Secretary should have performed an analysis as to whether MRH qualified for a revision under 42 C.F.R.

§ 412.63(w)(2)(i).[2] Yet it is clear from MCHC's letter that the request is being made based on the special one-time process detailed in the Federal Register. A.R. 242-44. The actual request submitted by MRH leaves no doubt as to the sole basis under which the request was made, as it sought "an adjustment to the FFY 1995 Wage Index data for this facility based on the 'Data Entry or Tabulation Errors' provision published in the November 19, 1998 Federal Register." A.R. 238. Plaintiffs simply did not seek relief under section 412.63(w)(2)(i), and the Secretary need not consider requests for relief that a provider does not make.

Additionally, although Plaintiffs assert that they did not certify MRH's data, Pls.' Opp. at 11, as stated in the Secretary's opening brief, Plaintiffs were provided with the opportunity to review the MRH data on two separate occasions – in February and May of 1998. See 63 Fed. Reg. 25,576, 25,589-90 (1998) (Proposed Rule); 63 Fed. Reg. 40,954, 40,971-72 (1998) (Final Rule); Def.'s Mem. at 17, 22. The FY 1995 hospital wage data was made publicly available for the specific purpose of allowing hospitals "to evaluate the wage data used to construct the proposed FY 1999 hospital wage index." 63 Fed. Reg. at 25,589; see also 63 Fed. Reg. at 40,971. Yet Plaintiffs chose not to avail themselves of the opportunity presented to them to review the data. Def.'s Mem. at 17.

---

[2] With regard to the provision at 42 C.F.R. § 412.63(w)(2)(i), Plaintiffs contend that the Secretary referenced subsection (i)(B) (the portion stating that the "hospital could not have known about the error") without advising the court that said provision was connected to the requirement for a tabulation error in subsection (i)(A). This accusation is false. The Secretary noted the full text of subsection (2)(i) in the "Statutory and Regulatory Framework" section of his opening brief. Def.'s Mem. at 7. The Secretary's discussion of section 412.63(w)(2)(i) simply averred that if Plaintiffs believed they had been harmed by an error in the MRH wage data which they could not have known about until after the deadline for requesting changes in such data, Plaintiffs should have invoked that provision, not a one-time process discussed in the November 19, 1998 Federal Register. There was no attempt at deception in the Secretary's discussion of section 412.63(w)(2)(i).

**IV.  The Statute Leaves the Specifics of Accounting for Wage Differences to the Secretary's Discretion**

Plaintiffs contend that "judicial review is an appropriate remedy if 'the Secretary refused to make any revision to an erroneous wage index.'"  Pls.' Opp. at 12 (quoting Methodist Hosp. of Sacramento, 38 F.3d at 1230).  The applicability of this quote is dubious.  In Methodist Hospital, the court discussed the Secretary's policy of not making retroactive changes to the wage index and found that the Secretary's refusal to make retroactive changes was not in conflict with the statute.  The quote has no relevance to the situation in this case, where the complaining hospital failed to follow the required procedures to qualify for relief under the terms of the November 19, 1998 Federal Register.  In the year in question, the Secretary found cause to make the majority of the changes requested by providers.  The record shows that of the 150 requests for wage data revisions, the Secretary granted 101 in full and 7 in part for Federal fiscal year 1999.  64 Fed. Reg. 9378, 9379 (1999); Def.'s Statement ¶ 28.  Thus, the overwhelming majority of requesters did comply with the Secretary's reasonable requirements for obtaining wage data revisions.[3] These numbers demonstrate that the situation presented here is not one where the "Secretary refused to make any revision to an erroneous wage index."  Methodist Hosp. of Sacramento, 38 F.3d at 1230.

Plaintiffs also criticize the Secretary's argument that the statute does not require use of a wage index, citing the provisions at 42 U.S.C. § 1395ww(d)(8)(C) and (d)(13) that do refer to a

---

[3] Plaintiffs claim that "no provider in the entire nation qualified" for the special one-time mid-year correction.  Pls.' Opp. at 7.  However, the final rule states that of the 150 requests only "35 hospitals did not meet the criteria for revision as stated in the November 19 final rule with comment period."  64 Fed. Reg. at 9379.  Thus, Plaintiffs' suggestion that the process was "meaningless and not reasonable," Pls.' Opp. at 7, is not credibile.

"wage index." However, these two provisions were inserted into the statute in amendments subsequent to 42 U.S.C. § 1395ww(d)(3)(E).[4/] Thus, Congress was not mandating the use of a wage index so much as recognizing that the Secretary was already employing a wage index in order to effectuate the prior directive of the statute to account for area wage differences. In any event, the larger point, as noted above, is that Congress entrusted the Secretary with discretion to employ a methodology that would account for wage variations. Methodist Hosp. of Sacramento, 38 F.3d at 1230.

While Plaintiffs strive to emphasize at several points in their opposition brief that the fiscal intermediary unilaterally changed the number of hours reported by MRH, see, e.g., Pls.' Opp. at 5, 7, 13, 14, the record shows that the fiscal intermediary had little choice but to act on its own. As Plaintiffs concede, repeated attempts to elicit assistance from MRH went unanswered. Def.'s Statement ¶¶ 4, 6, 10; Pls.' Statement ¶¶ 5, 7, 16. When the fiscal intermediary was finally able to obtain some information from MRH, it did not concern the total paid hours at issue here. Def.'s Statement ¶¶ 11, 12; A.R. 57-59.

## V.  MRH's Wage Data Should Not Be Excluded From the Wage Index Calculation

Plaintiffs rehash the argument made in their opening brief that MRH's data should have been excluded from the wage index calculation altogether because it was "aberrant and unreliable." Pls.' Opp. at 14; Pls.' Mem. at 21-22. In the Secretary's brief, however, the Secretary explained the circumstances under which data is excluded. Def.'s Mem. at 23-24.

---

[4/] Section 1395ww(d)(3)(E) was added to the statute in 1983. Pub. L. 98-21, § 601(e). The current provision at section 1395ww(d)(8)(C) was inserted as part of 1987 amendments. Pub. L. 100-203, § 4005(a)(1), as amended by Pub. L. 100-360, § 411(b)(4)(C)(i). The provision at section 1395ww(d)(13) was added with 2003 amendments. Pub. L. 108-173, § 505(a).

Those situations include where a hospital fails the agency's computer data edits and corrections cannot be made because the hospital no longer participates in the Medicare program.  Id.; 71 Fed. Reg. 47,870, 48,015 (2006); see also 59 Fed. Reg. 45,330, 45,353 (1994).  Data also may be excluded when it results in zero or negative average hourly wages or data so aberrant that the data cannot be used.  Def.'s Mem. at 23-24; 71 Fed. Reg. at 48,015.  Excluding from the wage index calculations the wage data of hospitals who fail to cooperate with the fiscal intermediaries would merely encourage hospitals with low average hourly wages to persist in their non-cooperation with the result that a MSA's average hourly wage – and consequently its wage index – would be unjustifiably high.  See Def.'s Mem. at 24.  Furthermore, excluding MRH's wage data from the wage index calculation would still result in a wage index that was at least just as "inaccurate" as the one to which Plaintiffs object.  Indeed, Plaintiffs provide no evidence to suggest that that inaccuracy would not be of a greater magnitude than that of which they complain here.

Plaintiffs point to just one PRRB case, JFK–Raritan Bay–Hunterdon 03 Wage Index Group v. BlueCross BlueShield Ass'n, Dec. No. 2007-D2 (PRRB Oct. 11, 2006), CCH Med. & Med. Guide ¶ 81,617, in support of their contention that MRH's data should be omitted entirely. But this administrative case carries no weight before this Court, and a lower administrative tribunal cannot bind the Secretary's higher authority.  Community Care Found. v. Thompson, 318 F.3d 219, 227 (D.C. Cir. 2003).

Finally, the Secretary notes that in their opposition brief Plaintiffs for the first time have changed the remedy that they seek from this Court.  In their complaint, and up to this point, Plaintiffs consistently sought to have revisions made to MRH's wage data and the resulting new

10

wage index applied to the Chicago MSA for Federal fiscal year 1999.  <u>See</u> Complaint at p. 19

(seeking remand to CMS for recalculation of the wage index based on "correct" wage data); Pls.'

Mem. at 24.  Yet, in their reply brief, Plaintiffs seemingly have changed their position and now

want this Court to either "make corrected payments based on what the parties agree is the correct

data, <u>or based on excluding MRH data from the PPS payment determination.</u>"  Pls.' Opp. at 16

(emphasis added).  Neither of these courses of action would be appropriate.  Rather, should the

Court rule that the wage data revision must be applied (and it should not), the Court should not

award any specific relief, but rather remand to the agency for the requisite recalculation.  <u>County</u>

<u>of Los Angeles v. Shalala</u>, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (where agency action is

overturned, the proper course is a remand to the agency for additional action consistent with the

court's ruling).

### <u>CONCLUSION</u>

For the foregoing reasons, as well as the reasons set forth in the Secretary's opening brief,

the Secretary respectfully requests that the court deny Plaintiffs' motion for summary judgment

and grant the Secretary's motion for summary judgment.

Respectfully submitted,

 /s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

11

    /s/_____
MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220

    /s/_____
PAUL E. SOEFFING
Attorney
D.C. Bar No. 459480
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room C2-05-23
7500 Security Boulevard
Baltimore, Maryland 21244-1850
410-786-1895

OF COUNSEL:

DANIEL MERON
General Counsel

KATHLEEN H. McGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services