UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVENTIST GLENOAKS HOSPITAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of Health and Human Services, <br><br> Defendant. | Civil No. 06-1206 (EGS) <br><br> ECF |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action, Plaintiffs challenge the Secretary's denial of a request to revise the wage data of Michael Reese Hospital ("MRH") – a non-party to this lawsuit. The wage data is used to determine the wage index component of Medicare's hospital inpatient Prospective Payment System. Plaintiffs here are subject to the Chicago, Illinois Metropolitan Statistical Area ("Chicago MSA") wage index.

In their opposition brief, Plaintiffs focus on the issue of what the total paid hours should have been for MRH and claim that the Secretary has ignored this issue. However, Plaintiffs fail to recognize that the central issue in this case is whether MRH followed the necessary requirements to obtain a revision to its wage data pursuant to the Secretary's rules for revising such data. MRH did not respond to repeated requests from its fiscal intermediary for explanation of its data. Nor did MRH properly seek a revision to its data. Likewise, the other hospitals in the Chicago MSA, who are Plaintiffs in this lawsuit, had the opportunity to review MRH's data for accuracy prior to the Secretary's finalization of the wage indices – yet they failed to bring

any potential problems to the Secretary's attention. Because of these failures of both MRH and Plaintiffs, Plaintiffs have no right to now seek a revision of MRH's wage data nor to seek a revision of the wage index that is based on that data.

## ARGUMENT

### I. There Was No Data Entry or Tabulation Error

Plaintiffs continue to contend that the error in MRH's data was a "data entry or tabulation error." Pls.' Opp. at 2. However, as the Provider Reimbursement Review Board ("PRRB") found in its decision, A.R. 59-60, and as Defendant explained in his opening brief, the error was not due to an erroneous entry of data or an erroneous tabulation of that data by the fiscal intermediary or the agency. Def.'s Mem. at 14-15. Because there was no timely request to revise MRH's data by March 9, 1998 that could have lead to a data entry or tabulation error, Plaintiffs could not avail themselves of the special one-time mid-year correction process for Federal fiscal year ("FY") 1999. 63 Fed. Reg. 64,191, 64,192 (1998); Def.'s Mem. at 8.

Plaintiffs contend that the situation here is similar to that in Bellevue Hospital Center v. Leavitt, 443 F.3d 163 (2d Cir. 2006). However, the circumstances in Bellevue were much different. Bellevue involved the agency's occupational mix adjustment to the wage index that was required to be applied beginning on October 1, 2004. Bellevue, 443 F.3d at 172. The statute required that the Secretary "'provide for the collection of data every 3 years on occupational mix for employees of each [covered] hospital . . . in the provision of inpatient hospital services, in order to construct an occupational mix adjustment in the hospital area wage index.'" Id. (citing § 304(c)(1) of the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000, Pub. L. 106-554, 114 Stat. 2763). The agency gathered the data, but

indicated that it lacked confidence in the data because (1) hospitals were surveyed for a short period of time, (2) there was no time to audit the data, and (3) there was no baseline to use to evaluate the data for potential errors because this was the first time the data were collected. Id. at 173.  Thus, the agency decided to apply the occupational mix adjustment to only ten percent of the wage index for the first year. Id.  The Court of Appeals held that the statute required "application in full on October 1, 2004," id. at 178, and that the agency's decision to implement the provision at only 10 percent was therefore arbitrary and capricious, id. at 179.  However, in the wage index situation here, the statute does not say how to collect or correct the data.  The statute merely requires the Secretary to account for varying wage levels and leaves the details of that process to the Secretary's discretion.  42 U.S.C. § 1395ww(d)(2)(H), (3)(E); Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1230 (D.C. Cir. 1994) ("[S]tatute does not specify how the Secretary should construct the index, nor how often she must revise it . . . . Rather, Congress through its silence delegated these decisions to the Secretary."); Def.'s Mem. at 18-19.  Thus, the court in Bellevue concluded that the agency had not complied with the statute, whereas no such finding can be made here.

      Plaintiffs make the further argument that the letter submitted by the Metropolitan Chicago Healthcare Council ("MCHC") regarding MRH's request did not limit the relief sought to the special one-time mid-year correction in the November 19, 1998 Federal Register.  Pls.' Opp. at 5.  Presumably, Plaintiffs are suggesting that the Secretary should have performed an analysis as to whether MRH qualified for a revision under 42 C.F.R. § 412.63(w)(2)(i), but this

is not clear.[1/]  What is clear from MCHC's letter is that the request was being made based on the special one-time process detailed in the Federal Register.  A.R. 242-44.  The actual request submitted by MRH leaves no doubt as to the sole basis under which the request was made, as it sought "an adjustment to the FFY 1995 Wage Index data for this facility based on the 'Data Entry or Tabulation Errors' provision published in the November 19, 1998 Federal Register."  A.R. 238.  The Secretary need not consider requests for relief that a provider does not make.  Plaintiffs simply did not seek relief under section 412.63(w)(2)(i).

Plaintiffs also make the point that they did not certify MRH's data.  Pls.' Opp. at 6.  Although that may be true, as stated in the Secretary's opening brief, Plaintiffs were provided with the opportunity to review the MRH data on two separate occasions – in February and May of 1998.  63 Fed. Reg. 25,576, 25,589-90 (1998) (Proposed Rule); 63 Fed. Reg. 40,954, 40,971-72 (1998) (Final Rule); Def.'s Mem. at 16, 21.  The FY 1995 hospital wage data was made publicly available for the specific purpose of allowing hospitals "to evaluate the wage data used to construct the proposed FY 1999 hospital wage index."  63 Fed. Reg. at 25,589; see also 63 Fed. Reg. at 40,971.  Yet Plaintiffs chose not to avail themselves of the opportunity presented to them to review the data.  Def.'s Mem. at 16.

---

[1/] With regard to the provision at 42 C.F.R. § 412.63(w)(2)(i), Plaintiffs claim that the Secretary referenced subsection (i)(B) (the portion stating that the "hospital could not have known about the error") without advising the Court that said provision was connected to the requirement for a tabulation error in subsection (i)(A).  This accusation is false.  The Secretary noted the full text of subsection (2)(i) in the "Statutory and Regulatory Framework" section of his opening brief.  Def.'s Mem. at 7.  The point of the Secretary's discussion of section 412.63(w)(2)(i) was simply that if Plaintiffs believed they had been harmed by an error in the MRH wage data that they could not have known about until after the deadline for requesting changes in such data, then Plaintiffs should have invoked that provision, not the one-time process discussed in the November 19, 1998 Federal Register.  There was no attempt at deception in the Secretary's discussion of section 412.63(w)(2)(i).

## II. The Statute Leaves the Specifics of Accounting for Wage Differences to the Secretary's Discretion

Plaintiffs claim that "judicial review is an appropriate remedy if 'the Secretary refused to make any revision to an erroneous wage index.'"  Pls.' Opp. at 9 (quoting Methodist Hosp. of Sacramento, 38 F.3d at 1230).  The applicability of this quote is dubious.  The Methodist Hospital court, in making this statement, was discussing the Secretary's policy of not making retroactive changes to the wage index and found that the Secretary's refusal to make retroactive changes was not in conflict with the statute.  The quote has no relevance to the situation in this case, where the complaining hospital failed to follow the required procedures to qualify for relief under the terms of the November 19, 1998 Federal Register.  In the year in question, the Secretary found cause to make the majority of the changes requested by providers.  Of the 150 requests for wage data revisions, the Secretary granted 101 in full and 7 in part for Federal fiscal year 1999.  64 Fed. Reg. 9378, 9379 (1999); Def.'s Statement ¶ 28.  Thus, the overwhelming majority of requesters did comply with the Secretary's reasonable requirements for obtaining wage data revisions.[2/]  These numbers surely demonstrate that the situation presented here is not one where the "Secretary refused to make any revision to an erroneous wage index."

Plaintiffs also criticize the Secretary's argument that the statute does not require use of a wage index, citing the provisions at 42 U.S.C. § 1395ww(d)(8)(C) and (d)(13) that do refer to a "wage index."  However, these two provisions were inserted into the statute in amendments

---

[2/] Plaintiffs claim that "no provider in the entire nation qualified" for the special one-time mid-year correction. Pls.' Opp. at 3.  However, the final rule states that of the 150 requests, only "35 hospitals did not meet the criteria for revision as stated in the November 19 final rule with comment period."  64 Fed. Reg. at 9379.  Thus, Plaintiffs' suggestion that the process was "meaningless and not reasonable," Pls.' Opp. at 3, is not credible.

subsequent to 42 U.S.C. § 1395ww(d)(3)(E).[3/]  Thus, Congress was not mandating the use of a wage index so much as recognizing that the Secretary was already employing a wage index to effectuate the prior directive of the statute to account for area wage differences.  In any event, the larger point, as noted above, is that Congress entrusted the Secretary with discretion to employ a methodology that would account for wage variations.  See Methodist Hosp. of Sacramento, 38 F.3d at 1230.

Plaintiffs strive to emphasize at several points in their opposition brief that the fiscal intermediary unilaterally changed the number of hours reported by MRH.  See, e.g., Pls.' Opp. at 1, 2, 6, 9, 10, 11.  However, the fiscal intermediary had little choice but to act on its own.  As Plaintiffs concede, repeated attempts to elicit assistance from MRH went unanswered.  Def.'s Statement ¶¶ 4, 6, 10; Pls.' Statement ¶¶ 5, 7, 16.  When the fiscal intermediary was finally able to obtain some information from MRH, it did not concern the total paid hours at issue here.  Def.'s Statement ¶¶ 11, 12; A.R. 57-59.

### III.  **MRH's Wage Data Should Not Be Excluded From the Wage Index Calculation**

Plaintiffs contend that MRH's data should have been excluded from the wage index calculation altogether because it was "aberrant and unreliable."  Pls.' Opp. at 10.  This is simply a rehashing of the argument Plaintiffs made in their opening brief.  See Pls.' Mem. at 30.  In his opening brief, the Secretary explained the circumstances under which data is excluded.  Def.'s Mem. at 22-23.  Those situations include where a hospital fails the agency's computer data edits

---

[3/] Section 1395ww(d)(3)(E) was added to the statute in 1983.  Pub. L. 98-21, § 601(e).  The current provision at section 1395ww(d)(8)(C) was inserted as part of 1987 amendments.  Pub. L. 100-203, § 4005(a)(1), as amended by Pub. L. 100-360, § 411(b)(4)(C)(i).  The provision at section 1395ww(d)(13) was added with 2003 amendments.  Pub. L. 108-173, § 505(a).

and corrections cannot be made because the hospital no longer participates in the Medicare program. Id.; 71 Fed. Reg. 47,870, 48,015 (2006); see also 59 Fed. Reg. 45,330, 45,353 (1994). The other situation is where the data results in zero or negative average hourly wages or data so aberrant it cannot be used. Def.'s Mem. at 23-24; 71 Fed. Reg. at 48,015. Excluding from the wage index calculations the wage data of hospitals who fail to cooperate with the fiscal intermediaries would merely encourage hospitals with low average hourly wages to persist in their non-cooperation with the result that a MSA's average hourly wage – and consequently its wage index – would be unjustifiably high. See Def.'s Mem. at 23. Furthermore, excluding MRH's wage data from the wage index calculation would still result in a wage index that was just as "inaccurate," if not more, as the one Plaintiffs object to. Plaintiffs provide no evidence to suggest that that inaccuracy would not indeed be of a greater magnitude than what they complain of here.

Plaintiffs point to just one case in support of their contention that MRH's data should be omitted entirely. Plaintiffs cite a PRRB case, JFK–Raritan Bay–Hunterdon 03 Wage Index Group v. BlueCross BlueShield Ass'n, Dec. No. 2007-D2 (PRRB Oct. 11, 2006), CCH Med. & Med. Guide ¶ 81,617. But this administrative case carries no weight before a Federal district court. There is no authority for the proposition that a lower administrative tribunal can bind the Secretary's higher authority. See Community Care Found. v. Thompson, 318 F.3d 219, 227 (D.C. Cir. 2003). Moreover, had the situation in the instant case been similar to that in JFK–Raritan Bay, presumably the PRRB would have ruled that here too the wage data should have been excluded from the wage index. The PRRB did not so find. A.R. 1-3, 54-63.

Finally, the Secretary notes that in their opposition brief, Plaintiffs for the first time have

7

changed the remedy that they seek from this Court.  In their complaint, and up to this point, Plaintiffs consistently sought to have revisions made to MRH's wage data and the resulting new wage index applied to the Chicago MSA for Federal fiscal year 1999.  See Complaint at p. 19 (seeking remand to CMS for recalculation of the wage index based on "correct" wage data).  Yet, in their reply brief, Plaintiffs seemingly have changed their position and now want this Court to either "make corrected payments based on what the parties agree is the correct data, or based on excluding MRH data from the PPS payment determination."  Pls.' Opp. at 19 (emphasis added).  In fact, neither of these courses of action would be appropriate.  Rather, should the Court rule that the wage data revision must be applied (and it should not), the Court should not award any specific relief, but rather remand for the agency to perform the required recalculation.  County of Los Angeles v. Shalala, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (where agency action is overturned, the proper course is a remand to the agency for additional action consistent with the court's ruling).

**IV.  The Questions Posed in the Court's Order of March 31, 2008**

In his opening brief, the Secretary addressed in detail the two questions the Court posed in its March 31, 2008 Order.  The Secretary does not believe that much additional discussion is required to respond to Plaintiffs' arguments on those points.

As to the first question – whether and when Plaintiffs knew or could have known that the total hours data submitted by MRH and subsequently altered by the fiscal intermediary was incorrect – Plaintiffs now acknowledge that they in fact knew there was an error in MRH's data shortly after May 8, 2008, when the proposed rule containing the wage indices for the various labor market areas in the nation for federal fiscal year 1999 was published.  See Pls.' Opp. at 13.

This is a significant concession, because if Plaintiffs were able to detect the error based on the data contained in the proposed rule, they also could have detected it based on the data contained in the February 1998 public use file. As pointed out in the Secretary's opening memorandum, the public use file contains all the raw wage and hour data for every hospital around the country that is paid based on Medicare's prospective payment system. See Def.'s Mem. at 25-26. Therefore, since a hospital's average hourly wage is simply its total wages divided by its total hours, Plaintiffs could have used that data to easily calculate the average hourly wage for MRH that was later reflected in the March 8, 1998 proposed rule. Plaintiffs' statement that the data in the public use file "does not contain the calculation of either the Chicago [area] wage index or MRH's average hourly wage," Pls.' Mem. at 14, is misleading. The public use file may not contain those calculations, but by providing the raw hour and wage data for every hospital nationwide, it provided users – including Plaintiffs here – with the means to perform those calculations themselves.

     Plaintiffs' complaint that while they might have known there was an error in MRH's data early in 1998, they did not know exactly what that error was, see Pls.' Mem. at 13-14, does little more than describe the consequences of Plaintiffs' lack of vigilance. The public use file was released on February 6, 1998. See 63 Fed. Reg. 40,954, 40,971 (1998). If Plaintiffs had reviewed the file at that time, they would have discovered that MRH's data was problematic. They would then have had over a month to contact MRH and discover the exact nature of the error, in turn allowing MRH to request a revision in it data by March 9, 1998, the deadline for hospitals to submit requests for revisions of their wage data (which MRH took advantage of to request other unrelated data revisions). See 63 Fed. Reg. 25,576, 25,589 (1998). It should not

have been difficult to discover that the alleged error lay in MRH's total hours, as that was the figure revised by the Medicare fiscal intermediary during its desk review of MRH's data.[4/]  Thus, the public use file would have reflected one figure for MRH's total hours (the one adjusted by the intermediary) and MRH's records would have reflected another much lower figure. Plaintiffs certainly cannot claim that performing this kind of comparison would have been difficult, since eventually that is exactly what happened – Plaintiffs discovered the exact nature of the error and used it as the basis for their unsuccessful attempt to invoke the one-time wage-data revision process the Secretary made available in November 1998.

     The second question posed in the Court's March 31, 2008 Order asked whether there existed a process whereby Plaintiffs could have challenged the error in MRH's data and by when that process could have commenced.  In his opening brief, the Secretary demonstrated that Plaintiffs had one informal and one formal method at their disposal to challenge the error in MRH's data.  See Def.'s Mem at 26-29.  So it is clearly not true that the Secretary "effectively acknowledges that Plaintiffs had no legal remedies," as Plaintiffs allege in their opposition brief. Pls.' Mem. at 15.

     Plaintiffs' attempt to rely on a July 31, 2008 Federal Register passage to show that they could not have utilized the mid-year data correction process described at 42 C.F.R. § 412.63(w)(2) (1998) must fail.  See id. at 17.  That passage is from the final rule governing the Medicare inpatient prospective payment rates for federal fiscal year 2009.  See

---

[4/] It bears repeating that MRH failed to respond to the intermediary's repeated requests for information regarding MRH's total hours.  See Plaintiffs' Amended Statement of Material Facts as to Which There is No Material Issue at ¶¶ 5,7.  Any resulting error in that data is therefore at least as much the fault of MRH as it is the fault of the intermediary.

10

http://www.cms.hhs.gov/AcuteInpatientPPS/downloads/CMS-1390-F.pdf at 1 ("Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2009 Rates"). It describes the Secretary's policies regarding revisions to the data used to construct the wage index for that fiscal year. The policies that this rule announces in the passage on which Plaintiffs rely do not even become effective until October 1, 2008, the start of federal fiscal year 2009. Id. at 3. This rule might have some relevance here if Plaintiffs were arguing about their ability to seek a wage data revision in federal fiscal year 2009. But of course they are not. The parties in this case are arguing about Plaintiffs' right to have sought a revision in the data used to construct the wage index used in federal fiscal year 1999. Unlike the rules for 2009, the rules for 1999 contained no limitation on a hospital's using the mid-year correction process to address errors in another hospital's data. See 63 Fed. Reg. at 40,972.

Finally, the fact that the Secretary quoted from the decision of the PRRB and from certain stipulations that the intermediary entered into in the administrative proceedings in this case has no bearing on whether Plaintiffs had a means to challenge the error in MRH's data. See Pls.' Mem at 18. The Secretary did nothing more than describe historical events that had occurred in the course of the litigation. In no way do these benign factual statements show that Plaintiffs lacked a remedy to challenge the error in MRH's data. To the contrary, again, the Secretary in his opening memorandum demonstrated two ways Plaintiffs could have done so.

Plaintiffs' arguments in this regard have little force at any rate. Stipulations the intermediary may have entered into in the administrative proceedings are of little moment, as such stipulations do not bind the Secretary. See Howard Young Med. Ctr., Inc. v. Shalala, 207 F.3d 437, 443 (7th Cir. 2000). As to the decision of the PRRB, it found that it lacked jurisdiction

over MRH's appeal because MRH had not sought a revision in the total hours data at issue here by March 9, 1998. The Secretary has already acknowledged that Plaintiffs (as opposed to MRH) could not avail themselves of that remedy. See Def.'s Mem. at 27. It therefore makes sense that Plaintiffs' failure to avail themselves of that process did not lead the PRRB to conclude that it also lacked jurisdiction over Plaintiffs' appeal. But that does not mean that there were not other remedies, such as those described in the Secretary's opening memorandum, that Plaintiffs could have pursued. It just means that the PRRB could not dismiss Plaintiffs' appeal for failure to exhaust what was a mandatory remedy for MRH but was not a remedy for Plaintiffs.

Regardless of what other remedies might or might not have been available to Plaintiffs, the Secretary reiterates his position that the narrow issue in this case is the lawfulness of his decision denying Plaintiffs' request for relief under the one-time wage data revision process the Secretary made available in November 1998. As shown above and in the Secretary's earlier brief, that decision was lawful because Plaintiffs' data revision request did not involve an agency tabulation error, which necessarily presumes an earlier timely request for a wage data revision. Here no such timely request for a revision of MRH's total hours data was ever made.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the Secretary's opening brief, the Secretary respectfully requests that the Court deny Plaintiffs' motion for summary judgment and grant the Secretary's motion for summary judgment.

>                     Respectfully submitted,
>
>                            /s/
>                     JEFFREY A. TAYLOR
>                     United States Attorney
>
>
>                            /s/
>                     CHRISTOPHER B. HARWOOD
>                     Assistant United States Attorney
>                     N.Y. Registration No. 4202982
>                     Judiciary Center Building
>                     555 Fourth Street, N.W.
>                     Washington, D.C. 20530
>                     (202) 307-0372
>
>
>                            /s/
>                     ANDREW B. SPALDING
>                     Attorney
>                     D.C. Bar No. 501297
>                     U.S. Department of Health and Human Services
>                     Office of the General Counsel
>                     Centers for Medicare & Medicaid Services Division
>                     5309 Cohen Building
>                     330 Independence Avenue S.W.
>                     Washington, D.C.  20201
>                     (202) 205-8705

<u>OF COUNSEL</u>:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation
United States Department of
Health and Human Services